IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CLINTON Q. KIDD and
IANTHA JOY KIDD                                                        PLAINTIFFS

V.                                    CIVIL NO. 4:12-cv-4105

FRANK TOWNSLEY and
TANNER HEAVY EQUIPMENT
CO., L.L.C.                                                            DEFENDANTS

**MEMORANDUM OPINION**

Plaintiffs Clinton Q. Kidd ("Clinton Kidd") and Iantha Joy Kidd filed a Complaint (ECF

No. 1) against Defendants Frank Townsley ("Townsley") and Tanner Heavy Equipment Co.,

L.L.C. ("Tanner") alleging that Defendant Townsley negligently injured Plaintiff Clinton Kidd

while in the scope of his employment with Defendant Tanner.  This matter is now before the

Court on Defendant Tanner's Motion for Summary Judgment.  (ECF No. 17).   Plaintiffs and

Defendant Townsley have filed Responses.  (ECF No. 24 & 30).  Defendant Tanner has replied.

(ECF No. 33).  The Court finds this matter ripe for consideration.

BACKGROUND

This case arises out of an accident where Townsley accidentally shot his guide, Clinton

Kidd, during a bird hunting trip in south Arkansas.  Townsley was an employee of Tanner, a site

contractor in Leesburg, Lousiana.  Townsley worked as shop manager and performed repairs and

maintenance on Tanner's construction equipment.  In addition to these duties, Townsley made

decisions regarding whether Tanner should continue to order parts from a specific dealer.

Townsley frequently ordered parts from H&E Equipment (H&E), a dealer in Alexandria, Lousiana.  H&E routinely invited Townsley and other customers on recreational trips for customer appreciation to promote its business.  In this case, Townsley accepted an invitation to a bird hunting trip sponsored by H&E, and the shooting that injured Clinton Kidd occurred on the trip.

Townsley testified that the only reason he attended the hunting trip was "for the benefit of Tanner."  (ECF No. 24-1).  Townsley thought his attendance would preserve the working relationship between the businesses and provide Tanner with better prices on equipment and expedited service.  *Id.*  Townsley also testified that he informed his supervisor of the invitation from H&E to go on the hunting trip, and his supervisor told Townsley that it was a "good idea for him to go."  *Id.*  The supervisor disputes the details of the exchange.  The supervisor testified that he knew Townsley planned to go hunting with H&E employees but did not know H&E actually sponsored the trip.  (ECF No. 17-5).  Townsley also testified that he expected to be paid to go on the trip.  (ECF No. 24-1).  However, when completing his time sheet for payment purposes, Townsley reported that he had worked zero hours on the dates of the trip.

Townsley had previously declined two invitations to attend the H&E sponsored trips, and Townsley testified that he did not know whether declining to accept the invitations had any effect on the availability of parts or pricing.  (ECF No. 17-1).  Several H&E employees testified that Townsley's attendance on the trip supported a good business relationship between Tanner and H&E but would not result in better pricing or service.  (ECF No. 17-2, 3).  H&E representatives testified that the only way to secure pricing benefits was by placing orders that reached certain volume requirements.  *Id.*  However, an H&E representative testified a good business relationship may result in improved service.  (ECF No. 24-3).

2

STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 256.

DISCUSSION

Defendant Tanner filed a motion for summary judgment solely on the issue of its vicariously liability under the doctrine of *respondeat superior*.  Tanner maintains that it cannot be vicariously liable for Townsley's alleged negligence because Tanner was not acting within the scope of his employment at the time of the shooting.

I.   Choice of Law

As a threshold issue, the Court must determine which state law applies to this issue— Arkansas or Louisiana.  When jurisdiction is based on diversity, federal district courts must apply the choice-of-law rules of the state in which they sit.  *Lane v. Celadon Trucking, Inc.,* 543 F.3d 1005, 1010 (8th Cir. 2008).  This Court sits in Arkansas; thus, Arkansas's choice-of-law rules apply.  In addressing choice-of-law issues, the Arkansas Supreme Court has stated that courts should consider both the doctrine of *lex loci delicti* and the Leflar factors.  *Ganey v. Kawasaki Motors Corporation U.S.A.*, 234 S.W.3d 838, 847 (Ark. 2006).  The Court will now consider both tests.

Under the doctrine of *lex loci delicti*, the law of the place where the tort was committed should be applied.  *Id.*  Here, the tort was committed in Arkansas.  Thus, the *lex loci delicti* test favors the application of Arkansas law.

The Leflar factors also suggest that Arkansas law should apply in this case.  The Leflar factors include: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law.  *Wallis v. Mrs. Smith's Pie Co.*, 550 S.W.2d 453, 458 (Ark. 1977).  The Court will now examine each of the factors in turn.

First, to prevent forum shopping, predictability of results suggest that any two decisions, based on identical facts, should be the same regardless of where they occur. *Schubert v. Target Stores*, 201 S.W.3d 917, 922 (Ark. 2005). In this case, Arkansas and Louisiana law regarding *respondeat superior* do not conflict; thus, Tanner's liability under either state's law would be similar. *See Torrence v. Lewis*, 905 So.2d 1104, 1106 (La. App. 2005) (discussing Louisiana's *respondeat superior* law); *Davis v. Kukar*, 357 S.W.2d 275, 277 (Ark. 1962) (discussing Arkansas's *respondeat superior* law).

Second, when the underlying conduct is a tort, the maintenance of interstate order is of relatively limited importance. *Gomez v. ITT Educational Services, Inc.*, 71 S.W.3d 542, 547 (Ark. 2002). Citizens of one state will not likely travel to another to avail themselves of the other state's laws in committing a tort. *Id.*

Third, for simplification of the judicial task, Arkansas courts suggest that where out-of-state laws are outcome determinative, importing the out-of-state law should be considered. *Id.* Again, both Arkansas and Louisiana apply similar approaches for *respondeat superior*. Thus, the judicial task would be similar under either law.

Under the fourth consideration, advancement of the forum's governmental interests, the Court must examine the Arkansas contacts to decide this state's interest. *Schubert*, 201 S.W.3d at 922. Here, Arkansas's contacts to the accident are the site in south Arkansas where the negligence allegedly occurred and the injured Plaintiff, who is an Arkansas resident. Louisiana's sole contact is the employment relationship between Tanner and Townsley. Despite Louisiana's contact, Arkansas has a superior governmental interest in this case due to its interest in protecting its citizens from negligent behavior. *See id.* Thus, this factor favors Arkansas Law.

5

Finally, in order to determine the better law, the Court must consider which law makes "good socio-economic sense for the time when the court speaks" versus a state law that may be unfair and outdated. *Miller v. Pilgrim's Pride Corp.*, 366 F.3d 672, 675 (8th Cir. 2004). As stated above, Arkansas and Louisiana law regarding *respondeat superior* are substantially similar. Thus, this final factor has little bearing on the instant case.

Because the *lex loci delicti* test and the Leflar factors favor the application of Arkansas law, the Court will apply Arkansas law in determining whether Townsley was acting within the scope of his employment when the alleged negligence occurred.

II.   Vicarious Liability

Defendant Tanner contends that it cannot be vicariously liable for Townsley's alleged negligence on the hunting trip because the shooting did not occur when Townsley was engaged in the business assigned to him or contemplated as part of his employment.

Under the doctrine of *respondeat superior*, an employer may be vicariously liable for the tortious acts of its employee if the employee acted within the scope of his employment at the time of the incident. *Porter v. Harshfield*, 948 S.W.2d 83, 86 (Ark. 1997). In order to implicate the employer, the employee must be engaged in the employer's services, and the act must pertain to the particular duties of that employment. *Davis*, 357 S.W.2d at 277. Additionally, the act of the employee must be for the benefit of the employer. *Id.* If the employee completely turns aside from the employer's business and pursues his own personal benefit, the employer is not responsible. *Id.*[1]

The Court concludes that Plaintiff's theory of *respondeat superior* cannot be rejected as a matter of law. Upon reviewing the record presented, the Court finds that genuine issues of

[1] The parties cite several worker's compensation cases in their briefs. The Arkansas Supreme Court has held that "worker's compensation cases are not applicable to a master and servant case." *Van Dalsen v. Inman*, 379 S.W.2d 261, 243 (Ark. 1964).

material fact exist regarding two issues: (1) whether Townsley acted while engaged in Tanner's services; and (2) whether Townsley attended the trip for the benefit of Tanner.

As to the first issue, sufficient evidence exists such that a reasonable jury could find that Townsley engaged in Tanner's services when he attended the hunting trip. Townsley's duties at Tanner involved interacting with dealers, such as H&E, to order equipment parts, and H&E invited Townsley on the trip to develop these business interactions. Additionally, Townsley testified that his supervisor told him that attending the trip would be a "good idea." While Tanner disputes the details of the conversation, the summary judgment standard requires the court to view the record in a light most favorable to Townsley.

As to the second issue, sufficient evidence also exists such that a reasonable jury could find that Townsley attended the trip for the benefit of Tanner. Townsley testified that the only reason he attended the trip was for "the benefit of Tanner." Townsley assumed his attendance would preserve the working relationship between the businesses and provide Tanner with better prices and faster service. In response, Tanner presents evidence that Townsley's attendance on the trip would not create pricing benefits for Tanner; however, H&E employees testified that Townsley's attendance would foster a good working relationship between the companies which might result in better service. Thus, whether Townsley's presence on the trip benefited Tanner is a question for a jury.

CONCLUSION

For the reasons stated above, the Court finds that Defendant Tanner's Motion for Summary Judgment (ECF No. 17) should be and hereby is **DENIED**.  An order of even date consistent with this Opinion shall issue.

**IT IS SO ORDERED**, this 9th day of September, 2013.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge